UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ERNEST B. on behalf of VERNISHA EVELYNN B.,[1] | : Case No. 3:20-cv-375 |
| Plaintiff, | : Magistrate Judge Peter B. Silvain, Jr. : (by full consent of the parties) |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

Plaintiff Ernest B. brings this case challenging the Social Security Administration's partial denial of his wife's, Vernisha's, application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #16), the Commissioner's Memorandum in Opposition (Doc. #19), Plaintiff's Reply (Doc. #20), and the administrative record (Doc. #13).

**I.   Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Vernisha applied for benefits on April 1, 2014, alleging disability due to several impairments. The claim was ultimately remanded by this Court on September 27, 2019; however, Vernisha passed away prior to her remand hearing. (Doc. #13, *PageID* #s 1922-37; 2216-17).  Thereafter, Plaintiff was confirmed as the substitute party and testified at the remand hearing before Administrative Law Judge (ALJ) Gregory Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 416.920.  He reached the following main conclusions:

Step 1: Vernisha B. did not engage in substantial gainful employment after April 1, 2014, the application date.

Step 2: She has the severe impairments of sarcoidosis, history of pulmonary embolism and hypercoagulability, left knee arthritis with status/post 2012 surgery, left ankle fracture, obesity, migraine headaches, anxiety, depression, post-traumatic stress disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments between February 2, 2013 and the date of her death, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work… with the following exceptions: No more than occasional crouching, crawling, kneeling, stooping, balancing, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. No work around hazards such as unprotected heights or dangerous machinery. No concentrated exposure to temperature extremes or respiratory irritants. [Vernisha B.] was limited to performing simple, repetitive tasks with a specific vocational profile level of 1 or 2. No more than occasional superficial contact, as defined, with supervisors and co-workers. No contact with the general public. No fast-paced production work or jobs which involve strict production quotas. [Vernisha B.] was limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day or the next."

She was unable to perform any past relevant work after February 2, 2013.

> Step 5:  Prior to July 7, 2018, the date her age category changed, she could perform a significant number of jobs that exist in the national economy.
>
> Beginning July 7, 2018, the date her age category changed, she could not perform a significant number of jobs that exist in the national economy.

(Doc. #13-14, *PageID* #s 1829-1841). Based on these findings, the ALJ concluded that Vernisha was not under a benefits-qualifying disability prior to July 7, 2018, but that she became disabled on that date and continued to be disabled until her death on February 23, 2020. *Id.* at 1841.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #13-14, *PageID* #s 1829-41), Plaintiff's Statement of Errors (Doc. #16), and the Commissioner's Memorandum in Opposition (Doc. #19). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.    Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.　Discussion

In her Statement of Errors, Plaintiff raises a single assignment of error, which is that the ALJ reversibly erred in evaluating the treating source opinion of Dr. Patel. (Doc. # 16, *PageID* #s 2226-28). In response, the Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. #19, *PageID* #s 2239-43). For the reasons set forth below, Plaintiff's argument is not well taken.

Social Security Regulations provide that an ALJ is required to consider every medical opinion in the record and weigh each according to factors like the nature of the relationship, supportability, consistency, and specialization. 20 C.F.R. § 416.927(c)(1)-(6). The Regulations recognize several different types of "acceptable" medical sources: treating physicians, non-treating, yet examining physicians, and non-treating, record-reviewing physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R.§ 416.902. Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for the weight given a treating doctor's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Gayheart*, 710 F.3d at 376. Indeed, when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[,]" the ALJ is required to place controlling weight on the treating source's opinion.[2] *See Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 242 (6th Cir. 2007).

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on

4

Nonetheless, an ALJ may discount a medical source's opinion, including a treating source's opinion, when the source fails to explain or provide objective medical evidence to support his or her opinion or if the source's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). In addition, although medical source opinions about what an individual can still do or the individual's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the individual's RFC. *See* 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3), 416.946(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

Here, Plaintiff alleges that ALJ Kenyon failed to follow the treating physician rule when weighing the opinion of Amita Patel, M.D. (Doc. #16, *PageID* #2226-28). Dr. Patel completed a form related to Vernisha's mental impairments and capabilities in February 2016. (Doc. #13-2, *PageID* #s 1790-92). In the form, Dr. Patel indicated that she had been treating Vernisha for bipolar I disorder, panic disorder, and post traumatic stress disorder since July 2011. *Id*. at 1790. She indicated that Vernisha displayed signs and symptoms, including mood disturbances, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, intrusive recollections of traumatic experience, persistent irrational fears, and generalized persistent anxiety. *Id*. She also noted that Vernisha exhibited restlessness and feelings of being "keyed up," palpitations/pounding heart, depressed mood, diminished interest/pleasure in activities, psychomotor changes, and impairments in social and occupational functioning. *Id*.

---

or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Vernisha's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

As a result of these symptoms, Dr. Patel treated Vernisha with psychiatric medication and psychotherapy, which she indicated resulted in stable response with a guarded prognosis. *Id*. at 1791. She opined that Vernisha would miss between one to two days a month because of her impairments and treatment and that she would be distracted by her symptoms for one-third to one-half of a workday. *Id*. at 1791-92. Lastly, Dr. Patel indicated that Vernisha would not be able to perform full-time competitive work on a sustained basis without missing work more than two times a month or being off task more than fifteen percent of the workday. *Id*. at 1792.

In reviewing Dr. Patel's opinion, ALJ Kenyon acknowledged that she was Vernisha's treating source, but declined to give her opinion controlling weight. (Doc. #13-14, *PageID* #s 1837-38). ALJ Kenyon first took issue with Dr. Patel's opinion that Vernisha's mental health impairment would cause her to be absent one to two times a month and off task for one-third to one-half the workday, pointing out that "Dr. Patel does not offer any narrative explanation for this opinion[]" and that her "treatment notes do not reflect this significant level of functioning[.]" *Id*. at 1838. He also noted that Dr. Patel's opinion was inconsistent with the finding of the agency examiner, Dr. Carlos Cheng, who indicated that Vernisha did not have any limitation in her "ability to maintain adequate pacing while at work." *Id*. Here, ALJ Kenyon noted that Dr. Patel "may have based this opinion on [Vernisha's] statements during treatment sessions that she was having panic attacks and did not like being in contact with the public generally." *Id*. However, this statement was "inconsistent with [Vernisha's] function report statements, … which indicated that she could shop in stores for multiple hours at a time, albeit rarely." *Id*. Nonetheless, ALJ Kenyon remarked that "[e]ven if this limitation were entirely consistent" with Vernisha's complaints and her medical records, the limitation in her RFC pertaining to her social restrictions, including no

contact with the general public, would "fully accommodate[]" her limitations. *Id*. As a result, ALJ Kenyon concluded that he agreed with the prior ALJ's opinion of Dr. Patel's opinion and noted that "it is inconsistent with both her own treatment notes and the balance of the record, along with [Vernisha's] subjective complaints," causing him to afford her opinion only "little weight." *Id*.

      The undersigned finds no error with the ALJ's consideration and assessment of Dr. Patel's opinion. ALJ Kenyon properly declined to afford the opinion controlling weight and articulated good reasons for assigning the opinion only "little weight." As noted, ALJ Kenyon found that Dr. Patel failed to provide narrative or objective support for her opinion. The ALJ further noted that the treatment records did not demonstrate that Vernisha had the degree of limitation provided by Dr. Patel. Thus, ALJ Kenyon determined that the medical records, including Dr. Patel's own records, do not include the objective medical findings or other evidence to support the extreme limitations in Dr. Patel's opinions. *See* 20 C.F.R. § 416.927(c)(3), (c)(4); *see also*, *Walters,* 127 F.3d at 529-30.

      In the absence of any objective evidence or clinical findings to support Dr. Patel's opinions, the ALJ opined that Dr. Patel "may" have based her opinion on statements made by Vernisha during treatment. Plaintiff takes issue with this statement, asserting that "Dr. Patel did not indicate in any way that she relied only on [Vernisha's] subjective reports, and, besides, physicians are trained to both consider and investigate subjective reports as opposed to blindly accepting them on face value." (Doc. #16, *PageID* #2228). Clearly, Plaintiff misses the ALJ's point. Indeed, in stating that Dr. Patel's opinions may have been based on Vernisha's statements during treatment, the ALJ was not criticizing the practice of relying on subjective reports but was, rather, inferring how Dr. Patel could have reached the conclusions she did given the lack of

7

objective evidence and clinical findings supporting her conclusions as well as her failure to provide any explanation as to the basis of her conclusions.

Furthermore, ALJ Kenyon also found that Dr. Patel's limitations were inconsistent with other substantial evidence of record, including Vernisha's own statements from her functional report and Dr. Cheng's examination findings that she did not have any limitation in her ability to maintain pace. In cases such as these, where the medical source opinion is a pre-printed "check-the-box" form without narrative explanations for the recommended limitations, the ALJ does not err in rejecting the opinion if the check-the-box limitations are unsupported by treatment records and inconsistent with other record evidence. *See* 20 C.F.R. § 416.927(c)(2) (providing that a treating source opinion will be given controlling weight if and only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006) ("An ALJ may accomplish the goals of the 'good reasons' requirement by indirectly attacking the supportability of the treating physician's opinion...."). That is precisely what ALJ Kenyon did in this case. Accordingly, ALJ Kenyon did not err in discounting Dr. Patel's opinion on this basis.

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016) (Jolson, M.J.), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016) (Marbley, D.J.), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). However, the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing

*Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). For the reasons discussed above, Plaintiff has not shown that the ALJ erred when he reviewed the opinion of Dr. Patel. Accordingly, Plaintiff's assignment of error is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #16) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the Court's docket.

March 29, 2022  *s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge